UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
ALLEN PORTER,

                Petitioner,

-against-

CHARLES GREINER, Superintendent,
Green Haven Correctional Facility,

                Respondent.
----------------------------------------------------X

00 CV 6047 (SJ)
00 CV 7634 (SJ)

**MEMORANDUM
AND ORDER**

APPEARANCES:

ALLEN PORTER
96 A 0854
Green Haven Correctional Facility
Drawer B
Stormville, NY 12582
Petitioner, *Pro Se*

RICHARD A. BROWN, ESQ.
Queens County District Attorney
125-01 Queens Boulevard
Kew Gardens, NY 11415
By:    Nicoletta J. Caferri, Esq.
        Sharon Yaffa Brodt, Esq.
        Vered Adoni, Esq.
Attorneys for Respondent

JOHNSON, Senior District Judge:

      Before the Court is a motion to reconsider (the "Motion to Reconsider") by the petitioner, Allen Porter ("Petitioner"), who is proceeding *pro se*. For the reasons stated below, the Motion to Reconsider is denied.

1

# BACKGROUND[1]

On October 6, 2000, Petitioner brought the above-captioned action seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (the "§ 2254 Petition"). On June 18, 2001, the Court referred the § 2254 Petition to Magistrate Judge Viktor V. Pohorelsky for a Report and Recommendation (the "Report"). Judge Pohorelsky filed his Report on November 18, 2005.[2] On December 7, 2005, after the allotted time for filing objections to the Report passed without either party filing any objections, this Court adopted the Report and denied the § 2254 Petition.

On December 16, 2005, the Court received a letter from Petitioner dated December 12, 2005. In that letter, Petitioner noted his attempt to request an extension

---

[1] The parties are presumed to be familiar with the overall facts and procedural history of this case.

[2] As part of his original § 2254 Petition, as well as an amended petition filed in November 2002, both of which Judge Pohorelsky covered in the Report, Petitioner asserted the following seven claims: (1) the denial by the state trial court of Petitioner's request to give curative instructions to the jury after previously stricken testimony was read back; (2) the improper admission of prior crimes evidence concerning Petitioner's drug-related activities; (3) the introduction of grand jury testimony as prior consistent testimony without the proper foundation; (4) the existence of an inconsistent and repugnant verdict; (5) the imposition of consecutive sentences for Petitioner's conviction on two counts of second-degree murder with respect to two separate victims; (6) the state trial court's refusal to dismiss the indictment in its entirety after having dismissed an unrelated drug possession charge; and (7) ineffective assistance of appellate counsel for failing to raise on direct appeal that the jury had been provided with an erroneous charge. With respect to this last claim, Petitioner was denied relief by New York State courts on two occasions. See People v. Porter, 4 A.D.3d 377 (2d Dept. 2004) (rejecting Petitioner's claim of ineffective assistance of appellate counsel); People v. Porter, 3 N.Y.3d 646 (2004) (denying Petitioner's application for leave to appeal). In the Report, Judge Pohorelsky concluded that the appellate counsel claim was untimely because it was raised in an amended petition after the relevant statute of limitations permitting amendment had run, see 28 U.S.C. § 2244(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, and the appellate counsel claim did not relate back to any of the claims raised in the original § 2254 Petition.

P-049

of the time allotted for him to file objections to the Report and moved for reconsideration of this Court's December 7, 2005 Order denying the § 2254 Petition.

In an order dated January 4, 2006, the Court informed the parties that it would consider Petitioner's letter as a motion for the Court to reconsider the conclusions of law contained in the adopted Report, in light of any objections Petitioner planned to file. The Court then provided Petitioner with the opportunity to submit his objections to the Report, which Petitioner did in timely fashion.[3] The Court then directed Respondent to file a response, which Respondent did on August 10, 2006.

## DISCUSSION[4]

### I. The Appellate Counsel Claim is Untimely

*A. Rule 15(c)[5] Applies to Petitioner's Remaining Claim*

In his objections to the Report, Petitioner first points to <u>Subervi v. Stinson</u>, No. 97 CV 1295, 2003 WL 22462489, at *1 (E.D.N.Y. Oct. 10, 2003) (declining to apply

---

[3]Petitioner has filed objections with respect to only one aspect of Judge Pohorelsky's Report, namely, the conclusion that Petitioner's ineffective assistance of appellate claim was untimely. Thus, for the purposes of the Motion to Reconsider, the appellate counsel claim is the only claim subject to reconsideration.

[4]In addressing the present Motion, the Court is mindful that Petitioner was proceeding *pro se*. Thus, the Court will "read his papers liberally, interpreting them to raise the strongest arguments that they suggest." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks and citations omitted).

[5]Rule 15(c) of the Federal Rules of Civil Procedure ("Rule 15(c)") states, in relevant part, that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

3

Rule 15(c) and permitting a § 2254 petitioner to pursue an otherwise time-barred claim that did not relate back to the original petition), to argue that Judge Pohorelsky's conclusion was in error because, according to Petitioner, district courts are free to permit amendment of a habeas petition after the expiration of the relevant statute of limitations, even if the amended claims do not relate back to the claims contained in the original petition.

This is not so. As an initial matter, the Court appreciates, after reviewing Subervi, that there is not unanimity in this District regarding whether otherwise time-barred claims must relate back to the claims in the original petition in accordance with Rule 15(c). However, this Court is convinced that application of Rule 15(c)'s "relation-back" requirement is not optional. See Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 816 (2d Cir. 2000) (holding that "Rule 15(c) applies to § 2254 petitions" and stating that, because the petitioner in that case had "moved to amend his petition long after the one-year statute of limitations had run, *he was required to show that his amended petition relates back in accordance with Rule 15(c)*") (emphasis added). See also Ching v. United States, 298 F.3d 174, 181 (2d Cir. 2002) ("Fed. R. Civ. P. 15(c) governs the timeliness of a motion to amend submitted after AEDPA's statute of limitations has expired . . . . Under Rule 15(c), an amendment is timely if it 'relates back' to the original habeas motion.") (citations omitted). Thus, Subervi offers Petitioner no relief. His ineffective assistance of appellate counsel claim must satisfy

4

Rule 15(c)'s "relation-back" doctrine in order to be deemed timely.

### B. The Appellate Counsel Claim Does Not Relate Back

In light of the applicability of Rule 15(c), Petitioner must demonstrate that his appellate counsel claim, filed more than a year after the statute of limitations for filing a § 2254 petition had run, relates back to the claims he brought in his original petition. However, rather than substantively addressing this point, Petitioner takes issue with the scope of Rule 15(c), namely, the exact boundaries of the "conduct, transaction, or occurrence" from which a claim raised in an amended pleading must have arisen to satisfy the "relation-back" doctrine. Fed. R. Civ. P. 15(c)(2). Specifically, Petitioner asserts that Judge Pohorelsky improperly retroactively applied the Rule 15(c) standard elucidated in Mayle v. Felix, 125 S. Ct. 2562, 2574 (2005) (rejecting proposition that Rule 15(c)'s "conduct, transaction, or occurrence" standard means the same "trial, conviction, or sentence" and adopting the narrower standard that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order"). According to Petitioner, Judge Pohorelsky should have applied the more lenient interpretation of "conduct, transaction, or occurrence" that existed pre-Mayle, when Petitioner filed his original and amended § 2254 Petitions.

This Court need not decide whether retroactive application of Mayle was proper, because in the Report, Judge Pohorelsky did independently evaluate relation-

5

back of the appellate counsel claim under the pre-Mayle standard. See 00 CV 6047, Entry No. 44 (the Report) at 17. As Judge Pohorelsky noted, that standard was "whether the original complaint gave the [respondent] fair notice of the newly alleged claims." Fama, 235 F.3d at 815 (citation and internal quotation marks omitted). In applying the pre-Mayle standard, Judge Pohorelsky concluded that "nothing on the face of the original petition would have given Respondent fair notice of a prospective ineffective assistance claim based on the failure of appellate counsel to raise the issue of an allegedly erroneous jury charge, which it should be pointed out, was asserted more than two years after the limitations period had expired." The Report at 17. Because this Court concurs with that conclusion, Petitioner's ineffective assistance of counsel claim does not relate back to his original petition and is, therefore, untimely.

## II. Appellate Counsel Claim Would Not Entitle Petitioner to Relief

For the sake of completeness, the Court notes that, even if Petitioner's appellate counsel claim did relate back to his original filing, that claim would still not entitle him to relief.

### A. Claim Was Decided on the Merits by State Court

In order for a federal court to implement the appropriate standard of review of a state court decision adverse to a Petitioner, the federal court must first determine

6

P-049

whether the state court decided the claim at issue on the merits. <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 309-10 (2d Cir. 2001). If so, then this Court "must afford that decision the deferential standard of review established by [AEDPA] in 28 U.S.C. § 2254(d)." <u>Hawkins v. Costello</u>, No. 05-2103-pr, 2006 WL 2277967, at *3 (2d Cir. Aug. 9, 2006) (citation omitted). In order to determine whether a state court disposed of a claim on the merits, courts are to consider the following factors: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." <u>Sellan</u>, 261 F.3d at 314 (internal quotation marks and citation omitted).

Applying these factors, it is clear that the appellate counsel ineffectiveness claim was adjudicated on the merits by New York State's Appellate Division, Second Department, which was the state appellate court of record. This is especially evident by the fact that the state appellate court not only specifically referred to the appellate counsel claim but also, in noting Petitioner could not meet his burden with respect to that claim, cited to <u>Jones v. Barnes</u>, 463 U.S. 745 (1983) (holding that a defense attorney assigned to file appeal on behalf of a criminal defendant does not have the constitutional duty to raise every non-frivolous issue requested by the client). <u>See</u>

7

Porter, 4 A.D.3d at *1.[6]

Therefore, because the Court has concluded that the state court did adjudicate Petitioner's appellate counsel claim on the merits, the grant of a writ of habeas corpus here would be appropriate only if the state court's resolution of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[7]

### B. The Federal Law Is "Clearly Established"

The federal law at issue here, the ineffective assistance of counsel standard, was first articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).[8] It is also clear that "the constitutional right to effective assistance of counsel

---

[6] Notably, the brevity with which the state appellate court dismissed Petitioner's request for relief does not support the conclusion that the state court did not adjudicate the appellate counsel claim on the merits. Extremely succinct state court opinions appear to be the norm, even in cases such as these.

[7] While a petitioner may also be entitled to relief when a state court's adjudication on the merits "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), Petitioner's appellate counsel claim does not trigger that standard.

[8] In that case, the Supreme Court established a two-part test to determine whether a counsel's assistance was ineffective. First, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." Id. at 688. When evaluating counsel's performance, a court must examine the circumstances of counsel's conduct from counsel's perspective at the time rather than from hindsight. Id. at 689. Moreover, in order to satisfy the first prong of Strickland, Petitioner must overcome the strong presumption that the challenged action or inaction may be considered reasonable strategy. Id. Second, a petitioner must show that counsel's performance prejudiced his defense. Id. at 692. To show prejudice, there must

8

extends to appellate counsel." Sellan, 261 F.3d at 315 (citing Evitts v. Lucey, 469 U.S. 387, 396 (1985)). There is no doubt that the federal law that has emanated from Strickland and its progeny is "clearly established," including in the context at issue here. See Sellan, 261 F.3d at 309 (holding, in case where a petitioner similarly asserted ineffective assistance of appellate counsel for failure to raise a claim on direct appeal, that "a Sixth Amendment ineffective assistance of counsel claim necessarily invokes federal law that has been 'clearly established' by the Supreme Court within the meaning of AEDPA"). It is thus necessary for the Court, under AEDPA's deferential standard of review, to examine the state court's application of the "clearly-established" federal law.

### C. The Decision Was Not "Contrary to" "Clearly Established" Federal Law

A state court runs afoul of the "contrary to" clause when it either "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Because neither error occurred here, the state court's decision was certainly not defective in this regard. Thus, the Court

---

be a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. Id. at 694. As the Supreme Court stated, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Unless Petitioner satisfies both of the requirements of Strickland, it cannot be said that his conviction "resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.

need not dwell further on this aspect of the analysis.

### D. *The Decision Did Not Involve An "Unreasonable Application" of Law*

To apply federal law unreasonably, the state court must have "identifie[d] the correct rule of law but applie[d] that principle to the facts of the petitioner's case in an unreasonable way." Earley v. Murray, 451 F.3d 71, 74 (2d Cir. 2006) (citing Williams, 529 U.S. at 409). Such an action by a state court, however, must have been "objectively unreasonable," Williams, 529 U.S. at 409, "where objectively unreasonable means some increment of incorrectness beyond error." Earley, 451 F.3d at 74 (internal quotations marks and citation omitted).

Here, because nothing in the record indicates that appellate counsel's decision not to raise the jury charge issue fell below an objective standard of reasonableness under the prevailing professional norms, or even that Petitioner suffered prejudice as the result of appellate counsel not raising this issue on direct appeal, the state court did not unreasonably apply Strickland. As such, Petitioner's claim, even if timely, would not have entitled him to relief.

### III. Certificate of Appealability

The only remaining issue is the question of whether to grant a certificate of appealability. For a certificate of appealability to issue, petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

10

P-049

A substantial showing "does not require a petitioner to demonstrate that he would prevail on the merits, but merely that 'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" Santana v. U.S., No. 04 CV 1111, 2005 WL 180932, at *7 (S.D.N.Y. Jan. 26, 2005) (quoting Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002)) (internal quotation marks and citation omitted). Because Petitioner has made no substantial showing of the denial of a constitutional right in this case, a certificate of appealability shall not issue.

## CONCLUSION

For the reasons stated above, Petitioner's Motion to Reconsider is DENIED. The Clerk of the Court is directed to close the case.


SO ORDERED.

DATED:   September 1, 2006
         Brooklyn, NY                          _____
                                                Senior U.S.D.J.

11